NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

DARIA H. HUZIARSKI,                           :
                                               :

        Plaintiff,                           :

                              :            Civil Action No. 06-3071 (JAG)

            v.                              :

                              :               **OPINION**

JO ANNE B. BARNHART, Commissioner    :
of Social Security,                           :

        Defendant.                           :

---

**GREENAWAY, JR., U.S.D.J.**

      Plaintiff Daria H. Huziarski seeks review of the Social Security Commissioner's (the "Commissioner") decision denying her application for Social Security Disability Insurance Benefits (hereinafter "DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).[1]  Plaintiff argues that the decision is not supported by substantial evidence, as required by § 405(g), that the Commissioner "applied improper legal standards" in his evaluation of the Plaintiff, and that the Commissioner erred as a matter of law in denying Plaintiff's application initially and upon reconsideration.  For the reasons set forth in this Opinion, this Court finds that the Commissioner's decision must be vacated and remanded

---

[1] This section of the Social Security Act provides that any individual may obtain a review of any final decision of the Secretary made subsequent to a hearing to which he or she was a party.  The federal district court for the district in which the plaintiff resides is the appropriate place to bring such an action.  42 U.S.C. § 405(g).

for further consideration.

## I.    <u>PROCEDURAL HISTORY</u>

On September 24, 2003, Plaintiff filed an application for DIB, pursuant to Sections 216(i) and 223(a) of the Act.  (Tr. 79-81.)  Plaintiff's application alleges that her disability is the result of "obesity, arthritis, sciatica, left and right knee pain, low back pain, non-insulin dependent diabetes mellitus, hypertension, irregular urination, and sleep apnea."  (Pl. Br. 2-3; Tr. 12.) Plaintiff alleged the existence of a disability commencing on March 16, 2003, but her application was ultimately denied.  (Tr. 5-7, 10-11.)  Plaintiff requested a hearing on May 28, 2004.  (Tr. 12.) The hearing was held on August 8, 2005, before Administrative Law Judge ("ALJ") Ralph Muehlig, who denied Plaintiff's claims in a decision dated October 13, 2005.  (<u>Id.</u>)

In his decision, ALJ Muehlig concluded that Plaintiff was not disabled within the meaning of the Act, and consequently was not entitled to DIB or a Period of Disability pursuant to Sections 223(a) and 216(i) of the Act, respectively.  (Tr. 17.)  ALJ Muehlig made the following findings:

1.    Plaintiff met the special insured status requirements of the Act on March 16, 2003, the date that Plaintiff alleges she became unable to work, and will continue to meet them through December 31, 2008.

2.    Plaintiff has not engaged in substantial gainful activity since March 16, 2003.

3.    Medical evidence establishes that the claimant has "severe" obesity and musculoskeletal impairments, but does not establish medical findings which "meet" or "equal" in severity the clinical criteria of any impairment listed in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.

2

4.      Plaintiff's subjective complaints and statements of record are neither credible, nor consistent with the evidence, and are unsupported by the record.

5.      Plaintiff retains the residual physical functional capacity for sedentary work activity.

6.      Plaintiff retains the residual functional capacity to perform her past relevant work as a receptionist and secretary.

7.      Plaintiff has not been "disabled," as defined in the Social Security Act, as amended, since March 16, 2003.

(Tr. 16.)

Plaintiff requested review of ALJ Muehlig's decision on October 13, 2005. (Tr. 5.) On May 3, 2006, the Appeals Council denied Plaintiff's request. (Id.) On July 7, 2006, Plaintiff filed a complaint in this Court, pursuant to Section 205(g) of the Act, seeking reversal of the Commissioner's decision.

## II.      STATEMENT OF FACTS

### A.      Background

Plaintiff Daria H. Huziarski was born on February 17, 1948. (Tr. 79.) Plaintiff recorded on her Disability Report that she is five feet one and one-half inches tall, and weighs approximately 300 pounds.[2] (Tr. 93.) Plaintiff's highest completed level of education is the completion of the twelfth grade. (Tr. 97.) Plaintiff's past work experience includes working as a receptionist/secretary at an insurance company for several years, and working as a sales clerk at a camera shop. (Tr. 94.) Plaintiff asserts that she has not engaged in "substantial gainful activity" since March 16, 2003. (Id.)

---

[2] Plaintiff testified at the administrative hearing on August 29, 2005 that she weighed approximately 337 pounds. (Tr. 24.)

3

**B.**     **Claimed Disabilities**

Plaintiff claims that her disability commenced on March 16, 2003, resulting from a slipped disc and arthritis of the knees.  (Tr. 12, 93.)  She further claims that she suffers from obesity, arthritis, sciatica, left and right knee pain, low back pain, non-insulin dependent diabetes mellitus, hypertension, irregular urination, and sleep apnea.  (Tr. 24-26, 36, 39-52.)  Plaintiff testified that her knees "pop" and "grind," that she has a bad back, and that she struggles with diabetes.  (Tr. 25.)  Plaintiff further testified that she could not find a "sedentary" job that she was capable of working because such jobs are rare, and would require her to incur high commuting costs, which would render such jobs financially unfruitful.  (Tr. 33-34.)

Plaintiff also testified that her knee condition prohibits her from utilizing public transportation, that she must use a taxi to travel, and that she cannot walk for any prolonged period of time.  (Tr. 38-39.)  Plaintiff claims that she frequently cannot sleep for more than two hours at a time, and that laying down hurts her knees.  (Tr. 39-40.)  Plaintiff alleges that she suffers from frequent, irregular urination, for which she takes medication.  (Tr. 42.)  Plaintiff also claims that the combined effect of her impairments further complicates her ability to work.  (Tr. 53.)

**C.**     **Medical Evidence Considered by the ALJ**

The record indicates that Plaintiff was treated by Dr. John V. Kelly and Dr. William Vonroth, Jr., among others.  At the behest of the Commissioner, Dr. Lisa Zhang evaluated Plaintiff in a consultive capacity.

1.     Dr. John V. Kelly

Dr. Kelly's records indicate that Plaintiff began to complain of leg pain, phlebitis, and

4

sleep apnea in 1998.  (Tr. 173-79.)  Dr. Kelly prescribed several medications for Plaintiff,

including Celebrex and Demadex.  (Id.)  In 2001, Dr. Kelly referred Plaintiff to Dr. Michael A.

Pontoriero of the Thoracic Cardiovascular Surgical Group, who evaluated her symptoms of

venous stasis[3] and severe swelling of the left leg.  (Tr. 193.)  A venous doppler examination of

the leg "found that there was full compression and augmentation of the deep and superficial

venous systems, with no evidence of any deep or superficial vein thrombophlebitis[4]."  (Id.)  Dr.

Pontoriero's report further notes that Plaintiff appears to have "good, palpable femoral, popliteal

and pedal pulses, equal and symmetrical bilaterally." (Id.)  He "strongly" recommended that

Plaintiff wear support stockings, lose weight, avoid long periods of standing, reduce her salt

intake, and exercise as much as possible. (Id.)

Dr. Kelly's notes further indicate that, from June 12, 2002 through August 18, 2005,

Plaintiff complained of various problems, including a "popping" in her knees (Tr.168), pain in

her buttocks and right leg (Tr.167), back and ankle pain (Tr.166), a pulled right thigh muscle (Tr.

165), sciatica, lack of bladder control, lack of balance (Tr.163), and trouble walking (Tr. 235).

Dr. Kelly prescribed various medications in response to Plaintiff's complaints, including

---

[3] Venous stasis is "[a] disorder in which the normal blood flow through a vein is slowed or halted."  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY, 6th ED., 1801 (2002).

[4] Thrombophlebitis is a condition in which a vein is inflamed and forms a clot.  Also called "phlebitis," it usually occurs as the result of trauma inflicted to the vessel wall.  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY, 6th ED., 1708 (2002).

Celebrex,[5] Demadex,[6] aspirin, Bextra,[7] Actos,[8] Darvocet,[9] Avandia,[10] Percocet,[11] and Xanax.[12] (Tr. 162-93; 231-35.)

As of April 1, 2004, Dr. Kelly certified that Plaintiff is under his medical care for "arthritis, sciatica, back pain, diabetes, S/P arthroscopic surgery of the right knee for meniscus tear, hypertension, and obesity." (Tr. 207.) He further opined that Plaintiff is "unable to work at this time." (Id.)

     2.    Dr. Lisa Zhang

Dr. Lisa Zhang examined Plaintiff on October 24, 2003. (Tr. 194.) Dr. Zhang's report

_____

[5] Celebrex is a non-steroidal anti-inflammatory drug. Celebrex, http://www.celebrex.com/content/about_celebrex.jsp (last visited Dec. 12, 2007).

[6] Demadex is a diuretic used to reduce water in the body. Drugs.com, http://www.drugs.com/demadex.html (last visited Dec. 12, 2007).

[7] Bextra is a non-steroidal anti-inflammatory drug. It was voluntarily withdrawn from the market after concerns regarding its safety were raised. Drugs.com, http://www.drugs.com/bextra.html (last visited Dec. 12, 2007).

[8] Actos is an oral diabetes medicine that helps to control blood sugar levels. Actos is only intended to treat type 2 (non-insulin-dependant) diabetes, but can be used in conjunction with other diabetes medications. Actos, http://www.actos.com (last visited Dec. 12, 2007).

[9] Darvocet is a narcotic analgesic that is intended to provide pain relief. It is similar to codeine, and is addictive. Drugs.com, http://www.drugs.com/darvocet.html (last visited Dec. 12, 2007).

[10] Avandia is an oral diabetes medicine used to regulate blood sugar levels. Similarly to Actos, it is intended to treat type 2 diabetes. Avandia, http://www.avandia.com (last visited Dec. 12, 2007).

[11] Percocet is an addictive, narcotic pain reliever. Drugs.com, http://www.drugs.com/percocet.html (last visited Dec. 12, 2007).

[12] Xanax is a drug that manipulates brain chemicals in order to reduce anxiety disorders, including those caused by depression. Drugs.com, http://www.drugs.com/xanax.html (last visited Dec. 12, 2007).

notes that Plaintiff maintains, with regard to the cervical spine, "[f]ull flexation, extension, lateral flexion, and rotary movement bilaterally." (Tr. 195.) With regard to "upper extremities," Dr. Zhang recorded that the patient has "[f]ull ROM[13] of shoulders, elbows, forearms, and wrists bilaterally. No joint inflammation, effusion, or instability . . . . No muscle atrophy. No sensory abnormality. Reflexes physiologic and equal." (Id.) Dr. Zhang further noted that Plaintiff does not have scoliosis or kyphosis, and that the SLR[14] test was "negative bilaterally." (Id.) With regard to the "lower extremities," Dr. Zhang found Plaintiff to possess a full range of motion in her hips and ankles, and measured her knee flexion/extension, left and right, to extend to ninety degrees. (Tr. 196.) There are no signs of muscle atrophy or sensory abnormality. (Id.) In addition, her reflexes are physiologic and equal. There is no indication of joint effusion, inflammation, or instability. (Id.)

Dr. Zhang concluded that Plaintiff has a "mild restriction for prolonged standing, walking[,] and moderate restriction for bending, kneeling and squatting." (Id.) She further noted that Plaintiff should "make every effort to lose weight." (Id.)

Dr. Zhang gave Plaintiff a prognosis of "poor," and ordered x-rays. (Id.) The radiology report[15] indicated, with regard to the lumbar sacral spine x-ray, that there was "[m]inimal spondylolisthesis[16] of L4-on-L5[17]." (Tr. 197.) The report showed that the "disc spaces are

---

[13] This Court interprets the acronym ROM to indicate a range of motion.

[14] SLR is understood by this Court to indicate a straight leg raising test.

[15] The radiology report was completed by Dr. Pesho S. Kotval, M.D., Ph.D., a radiologist with Industrial Medical Associates. (Tr. 197.)

[16] Spondylolisthesis is "the partial forward dislocation of one vertebra over the one below it, most commonly the fifth lumbar vertebra over the first sacral vertebra." MOSBY'S MEDICAL,

preserved," and that "vertebral body heights are maintained." (Id.)

The report also noted that there is "[m]arked osteoarthritic changes around the left knee as described." (Tr. 196.) The report stated that Plaintiff's own assessment of the severity of her alleged impairments are only "partially credible," (Tr. 201) and that Plaintiff "retains physical capacity for sedentary work" (Tr. 203).

3.      Dr. William Vonroth

Plaintiff first sought treatment with Dr. Vonroth on July 15, 2002, due to increased complaints with her knee. (Tr. 205.) Dr. Vonroth noted that Plaintiff reported that she had arthroscopic surgery "with persistent discomfort." (Id.) Plaintiff had "persistent locking and catching," and was treated with anti-inflammatory drugs. (Id.) A repeat MRI on August 12, 2002 showed a "tear of the meniscus."[18] (Id.) Dr. Vonroth recommended an arthroscopic procedure. (Id.) "At the time of the procedure, the patient had severe degenerative arthritis and degenerative changes of the knee with torn meniscus." (Tr. 206.) The meniscus was "removed arthroscopically," and showed "severe degenerative changes." (Id.) Subsequently, Plaintiff was treated on August 12, September 2, and September 9 of 2003, with "injections for the severe arthritis." (Id.) Dr. Vonroth further noted that Plaintiff suffers from "persistent problems with her knee with ambulation." (Id.)

Dr. Vonroth last treated Plaintiff in his office on November 11, 2003, where she was

_____

NURSING, & ALLIED HEALTH DICTIONARY, 6th ED., 1619 (2002).

[17] L-4 and L-5 refer to the vertebrae impacted by the spondylolisthesis.

[18] The meniscus is "a curved, fibrous cartilage in the knees and other joints." MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY, 6th ED., 1078 (2002).

advised to take anti-inflammatory medications, and was told to consider a "total knee arthroplasty." (Id.) Dr. Vonroth concluded that Plaintiff is disabled, "will need a total knee arthroplasty and is dealing with weight reductions issues." (Id.)

## III.    DISCUSSION

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1980) (quoting Hess v. Sec'y of Health, Educ., and Welfare, 497 F.2d 837, 841 (3d Cir. 1974)). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

[and] (4) the claimant's educational background, work history and present age." <u>Blalock v.</u>

<u>Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1973); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J.

1981).  Where there is substantial evidence to support the Commissioner's decision, it is of no

consequence that the record contains evidence that may also support a different conclusion.

<u>Blalock</u>, 483 F.2d at 775.

**B.**     **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for benefits, a claimant must first establish that she is needy and aged,

blind, or "disabled." 42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if she is

unable to "engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); <u>see also</u> <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is

predicated on whether a claimant's impairment is so severe that she "is not only unable to do her

previous work but cannot, considering her age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A); <u>see also</u> <u>Nance v. Barnhart</u>, 194 F. Supp. 2d 302, 316 (D. Del. 2002).  Finally,

while subjective complaints of pain are considered, alone, they are not enough to establish

disability.  42 U.S.C. § 423(d)(5)(A).  An impairment qualifies as a disability only if it "results

from anatomical, physiological or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**     **The Five-Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[19]  20 C.F.R. § 404.1520(b).  If the claimant is engaged in such activity, the claimant is not "disabled," and the disability claim will be denied.  Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine if the claimant suffers from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner proceeds to the third step of the process.  At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, she will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the

---

[19] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

Third Circuit found that, to deny a claim at step three, the ALJ must specify which listings[20] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but must merely ensure "that there be sufficient explanation to provide meaningful review of the step-three determination."  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. App'x 468, 471 (3d Cir. 2005).

Step four requires that the ALJ consider whether the claimant possesses the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(e).  If the claimant is able to perform her past relevant work, she will not be found disabled under the Act. If the claimant is unable to resume her past work, and her condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At step five, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant number in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  Id.

Importantly, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step

_____

[20] Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

analysis, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  In addition, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003).  The burden, however, remains on the plaintiff to prove that the impairments, in combination, are severe enough to qualify her for benefits.  See Williams v. Barnhart, 87 Fed. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, No 02-3714, 2003 WL 22016801, at *2 (E.D. Pa. Jun. 10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

**D.**    **ALJ Muehlig's Findings**

ALJ Muehlig applied the five-step sequential evaluation and determined Plaintiff was not disabled within the meaning of the Act.  (Tr. 12-14.)  ALJ Muehlig found that Plaintiff satisfied step one of the analysis because she "has not engaged in substantial gainful activity since March 16, 2003, the alleged onset date."  (Tr. 12.)

At steps two and three, ALJ Muehlig found that Plaintiff "has obesity and musculoskeletal impairments, which impose more than minimal restrictions on her ability to perform some basic, physical work-related activities, and, therefore, constitute 'severe' medical impairments."  (Id.)  Nevertheless, he found that Plaintiff does not have an "impairment or combination of impairments which 'meet' or 'equal' the level of severity and duration and the clinical criteria of any impairment listed in the Listing of Impairments, Appendix 1, Subpart P,

13

Regulations No. 4." (Tr. 13.)  ALJ Muehlig noted that no "treating or examining physician has

mentioned clinical findings equivalent in severity to the criteria of any listed impairment."  (Id.)

ALJ Muehlig paid particular attention to the listing sections which deal with the musculoskeletal

body system, and concluded that Plaintiff's "severe musculoskeletal[] impairments, considered

either singly or in combination, are not accompanied by the abnormal clinical findings,

diagnostic test results or secondary complications required" by the listing.  (Id.)  In particular,

Plaintiff's alleged major "dysfunction of the left knee joint is not accompanied by evidence of

stiffness, signs of limitation of motion resulting in the inability to ambulate effectively as defined

in Section 1.00 B. 2. b." of the listing.  (Id.)  The ALJ also found that Plaintiff's "alleged low

back disorder is not manifested by evidence of nerve root compression, neuroanatomic

distribution of pain, motor loss, muscle atrophy or weakness, neurological deficits or the inability

to ambulate effectively."  (Id.)

At the fourth step of the evaluation process, after determining that the impairments failed

to rise to the level of severity of the listings, ALJ Muehlig considered the extent of the claimant's

"residual functional capacity and whether it allows the performance of her past relevant work."

(Id.)  In determining Plaintiff's residual functional capacity, ALJ Muehlig noted that any

subjective complaints and descriptions of limitations must be considered.  (Id.)  Although the

record shows the presence of "obesity and musculoskeletal impairments of the low back and the

left knee," ALJ Muehlig noted, "the claimant's description of her physical limitations is not

consistent with the medical record when considered in the [sic] entirety."  (Id.)  In addition, ALJ

Muehlig found Plaintiff's "allegations about the frequency, intensity and duration of her multiple

symptoms, including chronic, severe pain, are generally not credible and not consistent with the

14

evidence of record."  (Id.)

ALJ Muehlig noted a number of inconsistencies in Plaintiff's medical status.  ALJ
Muehlig understood that Plaintiff has a history of impairments involving her lower back and left
knee, and that she has a history of "progressively worsening left knee pain which ultimately
required arthroscopic surgery . . . ."  (Id.)  Nevertheless, ALJ Muehlig noted, Plaintiff had no
"surgery related complications or recurrence of left knee difficulties" between the time of her
surgery on February 11, 2003, and the date of the alleged onset.  (Id.)  A subsequent examination
by Dr. Zhang on October 24, 2003, performed at the request of the Social Security
Administration, produced x-rays of the left knee and showed "marked osteoarthritic changes."
(Id.)  ALJ Muehlig noted, however, that the x-rays revealed "objective clinical findings referable
to the left knee joint [that] were normal."  (Id.)  Specifically, the x-ray report stated that "[l]eft
knee flexion was possible to 90 degrees[,]" and reflexes were equal and physiologic.  (Id.)
Moreover, Plaintiff's muscle strength "in the lower extremities was normal."  (Tr. 13-14.)
Finally, "there was no clinical evidence of muscle atrophy, sensory abnormality, joint effusion,
inflammation or instability affecting the left knee joint."  (Tr. 14.)  An additional injury on or
around April 22, 2004, for which Plaintiff was hospitalized, resulted in a contusion, which has
improved with "medication and an Ace bandage."  (Id.)

ALJ Muehlig further found that Plaintiff's "alleged musculoskeletal impairment of the
low back," diagnosed by Dr. Kelly as sciatica, lacks any support from "definitive and positive
electrodiagnostic/electromyographic/nerve conduction studies."  (Id.)  In addition, ALJ Muehlig
found that the only "objective clinical and diagnostic test findings in the medical record do not
support [Plaintiff's] subjective complaints of severe low back pain and other symptoms which

15

are only partially credible and not to the extent alleged . . . ."  (Id.)  The October evaluation

performed by Dr. Zhang revealed some restrictions in motion, but Plaintiff had no signs of joint

tenderness or muscle spasm.  (Id.)  Moreover, Plaintiff retained good mobility, and did not

require the use of any device to ambulate.  (Id.)  Finally, ALJ Muehlig noted, x-rays of the

lumbosacral spine revealed only minimal spondylolisthesis at the L4 to L5 level.  (Id.)

ALJ Muehlig found Plaintiff's assertion that she suffers from non-insulin dependent

diabetes mellitus to be "not severe."  (Id.)  Additionally, ALJ Muhlig stated, the record fails to

indicate any "specific diabetes related subjective complaints, secondary complications, target

end-organ damage, significant functional limitations or the need for frequent inpatient hospital

admissions and multiple hospital emergency room treatment for acute diabetes related crisis."

(Id.)

ALJ Muehlig evaluated Plaintiff's alleged disabilities in conjunction with her "long-

standing history of morbid obesity."  (Id.)  ALJ Muehlig noted that "the Commissioner may

factor into the analysis any ailments caused by a claimant's obesity in terms of a consideration of

possible additional or cumulative effects of a claimant's obesity."  (Id.)  However, in this case,

ALJ Muehlig found "no evidence to demonstrate that any ailments have been caused or

aggravated by the claimant's obesity."  (Id.)  ALJ Muehlig considered Plaintiff's obesity in his

analysis, but rejected the idea that it caused or exacerbated "any medical ailments."  (Id.)

To the degree that Plaintiff's ailments affect "activities of daily living," ALJ Muehlig

noted that Plaintiff "engages in unrestricted activities . . . not consistent with her complaints of

severe pain . . . ."  (Tr. 15.)  "[S]he cooks, cleans, does laundry, shops, showers and dresses

herself, watches television, reads, socializes with and travels to a friend's house."  (Id.)

16

ALJ Muehlig acknowledges Plaintiff's use and dosage levels of various pain medications, but the use of such medication "is only one factor in the multi-factorial analysis of the credibility of a claimant's subjective complaints of pain." (Id.)  In addition, ALJ Muehlig notes that Plaintiff's use of Percocet and Darvocet "were restricted to September 11, 2003 and October 24, 2003, more than 2 years ago." (Id.)  Plaintiff has largely relied upon "non-steroidal, non-narcotic, anti-inflammatory medications (Celebrex, Bextra, Indocin) for treatment of pain." (Id.)

In ascertaining the Plaintiff's residual functional capacity, and in evaluating the credibility of her subjective complaints, ALJ Muehlig considered "both the claimant's own treating medical sources and a consultative medical source which belie her claim of total disability." (Id.)  ALJ Muehlig notes that, although a November 11, 2003 report by Dr. Vonroth concluded that Plaintiff is disabled, that date was the last time Plaintiff was evaluated by Dr. Vonroth. (Id.)  According to ALJ Muehlig, the "absence of any medical treatment from him since that date negates the persuasiveness of his comment." (Id.)

Dr. Kelly's assertion that Plaintiff is "disabled from working secondary to diagnoses of obesity, arthritis, sciatica, low back pain, diabetes mellitus and hypertension" is not, ALJ Muehlig concluded, "entitled to significant, persuasive or controlling probative weight since it is based solely in those reports on medical diagnoses rather than objective clinical findings." (Id.)  ALJ Muehlig focused on Dr. Kelly's more recent statements made on August 18, 2005, in which the doctor's comments were "more consistent with the ability [of Plaintiff] to engage in sedentary work activity." (Id.)  Dr. Kelly's estimates that Plaintiff can "carry 5 lbs., that she could sit 6 hours in a total 8-hour work day without interruption and that she could stand and walk 1 hour," are, opined ALJ Muehlig, "consistent with the residual physical functional capacity to perform

17

sedentary work activity." (Id.) ALJ Muehlig also believed that Dr. Zhang's opinions were

consistent with such an assessment. (Id.) Accordingly, ALJ Muehlig found that Plaintiff "retains

the residual functional capacity to engage in a full range of sedentary work activity." (Id.)

Under step five of the analysis, ALJ Muehlig concluded by noting that Plaintiff possesses

"prior relevant unskilled work experience as a receptionist and secretary," developed over the last

fifteen years. (Tr. 16.) In addition:

> As described and performed by the claimant, her past relevant job
> required her to engage in primarily a sedentary level of exertional
> work activity. She stated that her past job required her to lift and
> carry a maximum of 10 lbs. and stand and walk 2 hours a day in total.
> As previously concluded, the claimant's maximum sustained physical
> work capability is limited to sedentary work activity. Consequently,
> she would be able to return to her past relevant work.

(Id.) Accordingly, ALJ Muehlig declined to find that Plaintiff was disabled. (Id.)

**E.      Analysis**

Plaintiff maintains that ALJ Muehlig's decision should be reversed or remanded because

his decision is not supported by substantial evidence, and because he failed to account for several

relevant factors. Plaintiff posits four separate arguments: (1) the ALJ failed to account for

Plaintiff's obesity; (2) the ALJ failed to provide adequate explanation for his finding that

Plaintiff's subjective complaints lacked credibility; (3) the ALJ failed to assign proper weight to

the opinions of Plaintiff's treating physicians; and (4) the ALJ failed to properly assess all factors

relevant to an evaluation of Plaintiff's residual functional capacity.

The question of overriding concern for this Court is whether the Commissioner's decision

is supported by substantial evidence contained within the record.

1.      Whether ALJ Muehlig Erred By Failing to Account for Plaintiff's Obesity

18

<u>in Step Three of the Analysis</u>

Plaintiff alleges that ALJ Muehlig erred at step three of the analysis by failing to account for Plaintiff's obesity.  (Pl. Br. 11.)  According to Plaintiff, ALJ Muehlig "restricted the listing assessment solely to [P]laintiff's 'severe musculoskeletal impairments,' considered either singly or in combination, specifically [P]laintiff's left knee joint disorder and low back disorder."  (<u>Id.</u>)

This Court disagrees with Plaintiff's argument.  Plaintiff contends that ALJ Muehlig did not account for her obesity in his step three analysis, but the record points to the contrary. As the Commissioner argues in his brief, ALJ Muehlig "considered the [P]laintiff's obesity in detail." (Def. Br. 7) (citing Tr. 14.)  ALJ Muehlig wrote in his opinion:

> [O]besity must be considered when evaluating a claim for disability. In determining whether a claimant does have an impairment, the Commissioner may factor into the analysis any ailments caused by a claimant's obesity in terms of a consideration of possible additional or cumulative effects of a claimant's obesity . . . . In this case, there is no evidence to demonstrate that any ailments have been caused or aggravated by the claimant's obesity

(Tr. 14.)

ALJ Muehlig ultimately determined, based on the evidence before him, that Plaintiff's obesity does not lead to the conclusion that Plaintiff has an impairment.  ALJ Muehlig found that Plaintiff's torn meniscus "occurred spontaneously following a long pre-existing history of morbid obesity."  (<u>Id.</u>)  Furthermore, "the x-ray studies in the medical record establish an anatomical (spondylolisthesis) basis for the claimant's complaints of low back pain unconnected to her alleged obesity."  (<u>Id.</u>)  Additionally, a "review of the claimant's work history indicates the ability to function in a job requiring limited standing for many years."  (<u>Id.</u>)

Dr. Zhang's and Dr. Kelly's views and conclusions were instructive as well.  Dr. Zhang,

who conducted a "consultive orthopedic evaluation at the request of the Administration," found that Plaintiff ambulated without the assistance of any device, and "had good mobility in terms of her ability to mount and dismount the examination table."  (Id.)  Dr. Kelly's belief that Plaintiff is "disabled from working secondary to diagnoses of obesity, arthritis, sciatica, low back pain, diabetes mellitus and hypertension," was considered by ALJ Muehlig, but was "not entitled to significant, persuasive or controlling probative weight since it [was] based solely" on medical reports and not upon objective clinical findings.  (Tr. 15.)

Plaintiff's claim that ALJ Muehlig committed a reversible error by failing to account for her severe obesity at the third step of the evaluation process is without merit.

2.      Whether ALJ Muehlig Erred By Finding That Plaintiff's Subjective Complaints Lack Credibility

Plaintiff argues that her subjective complaints "regarding the nature and extent" of her pain were "supported and corroborated by uncontradicted objective medical evidence," and thus deserved greater consideration.  (Pl. Br. 15.)  While Plaintiff admits that ALJ Muehlig acknowledged the objective medical evidence, including x-rays, she claims that such evidence was treated in a way that "minimize[d] their import."  (Id.)  Plaintiff posits that these x-rays reveal "*marked* osteoarthrtitic changes," which serves as objective clinical proof that her subjective complaints correspond to her alleged injury.  (Id.) (emphasis in original.)  She also maintains that the "other evidence [on record] does not contradict the x-ray finding."  (Id.)

This Court finds these claims unconvincing. The function of the ALJ is to determine the credibility of a claimant and to "arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."

20

LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988); see also Hartranft v. Apfel, 181 F.3d 358,

362 (3d Cir. 1999) (affirming judgment of the Commissioner following ALJ's determination that

claimant's subjective complaints were exaggerated).  Much discretion is given to the ALJ to

make a determination about the credibility of a claimant's subjective complaints.  See LaCorte,

678 F. Supp. at 83.  If a rational basis exists for the ALJ to reject subjective complaints, even

when these complaints are corroborated by objective medical evidence, it is within his discretion

to do so.  Duncan v. Sullivan, 786 F. Supp. 466, 470 (E.D. Pa. 1992).

Plaintiff is correct in arguing that the ALJ may not dismiss subjective complaints of pain

in the disability analysis.  See Dorf v. Bowen, 794 F.2d 896, 901-2 (3d Cir. 1986).  There must

be evidence, as there is here, that there exists a condition which may produce pain.  Green v.

Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984).  The Third Circuit has stated that when a

claimant's subjective claims of pain are reasonably supported by available medical evidence, the

ALJ may not discount the subjective complaints of claimant's pain in the absence of contrary

evidence.  Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).

ALJ Muehlig, however, finds the medical record incompatible with Plaintiff's subjective

complaints.  ALJ Muehlig seriously considered the subjective complaints of pain in his analysis,

but ultimately found the complaints to lack a corresponding degree of clinical certainty and

overall credibility.  (Tr. 13-14, 15.)  Indeed, Dr. Zhang's assertion that Plaintiff's complaints are

only "partially credible" bolster ALJ Muehlig's conclusion.  (Tr. 201.)

Plaintiff next argues that ALJ Muehlig improperly disregarded relevant evidence.  (Pl. Br.

17.)  However, the Third Circuit held in Cotter v. Harris that an ALJ "is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice."  650 F.2d 481, 482 (3d Cir. 1981).  Plaintiff maintains that

ALJ Muehlig improperly discounted various medications which she used to alleviate pain,

including injections in her knee.  (Pl. Br. 19.)  The ALJ, however, considered Plaintiff's extensive

use of pain medications, including the use of powerful, narcotic drugs.  (Tr. 15.)  ALJ Muehlig

explicitly mentions Plaintiff's dependence on potent medications, and properly uses them as "only

one factor in the multi-factorial analysis of the credibility of a claimant's subjective complaints of

pain."  (Id.)

Plaintiff also argues that ALJ Muehlig improperly dismissed Dr. Vonroth's evaluations on

account of Plaintiff's failure to seek treatment from Dr. Vonroth since November 2003.  (Pl. Br.

16.)  Plaintiff argues that ALJ Muehlig improperly concluded that a lack of treatment infers the

absence of pain.  (Id.)  Plaintiff asserts that the Social Security Regulations bar any inferences

from a claimant's failure to pursue or receive regular medical attention.   Plaintiff further argues

that an ALJ may not dismiss subjective complaints of pain "because [Plaintiff] failed to visit her

physicians more frequently, due to unemployment or limited funds."  (Id.) (citing Kent v.

Scheweiker, 710 F.2d 110, 115 (3d Cir. 1983)).  Plaintiff claims she could not afford Dr.

Vonroth's treatment, and did not possess health insurance to cover the cost of the medical bills.

(Pl. Br. 17.)  In essence, Plaintiff maintains that ALJ Muehlig committed reversible error when he

disregarded "substantial evidence of plaintiff's inability to afford treatment."  (Id.)

However, ALJ Muehlig did not dismiss Plaintiff's subjective complaints because of her

failure to receive treatment from him within the past two years, but, rather, found Dr. Vonroth's

statements unpersuasive.  (Tr. 15.)  The ALJ may consider the frequency of medical visits and the

length of a doctor-patient relationship in his evaluation.  20 C.F.R. § 404.1527(d)(2)(i).  ALJ

22

Muehlig used this information as an additional consideration in his analytical process.

Last, Plaintiff posits that ALJ Muehlig did not consider evidence regarding her daily living activities.  (Pl. Br. 17.)  ALJ Muehlig noted in his decision that Plaintiff cooks, cleans, does laundry, showers and dresses herself, reads, shops, watches television, and travels to a friend's house, as conveyed in Dr. Zhang's evaluation report.  (Tr. 194-5.)  However, Plaintiff argues that ALJ Muehlig did not properly consider the limitations emphasized in this report, insofar as Dr. Zhang's report notes that Plaintiff engages in "light" weekly cleaning, "light" cooking, and "takes her clothes to a laundromat [where] they do it for her."  (Id.)  Although ALJ Muehlig failed to mention the qualifier "light" when considering Plaintiff's life activities, he is entitled to weigh the relevant evidence and render his own judgment based on the facts established in the record.  Consequently, ALJ Muehlig did not consider improperly the context of Plaintiff's daily life activities, and did not commit reversible error.  ALJ Muehlig's evaluation as to the ability of Plaintiff to conduct her daily affairs is merely one additional element in his determination of her credibility.

3.     Whether ALJ Muehlig Failed to Give Proper Weight to the Medical
        Opinions

Plaintiff argues that ALJ Muehlig failed to provide an adequate explanation for disregarding or giving less weight to the treating physicians' opinions.  (Pl. Br. 20.)  To support this argument, Plaintiff notes that "controlling weight must be given to a treating source's medical opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and 'not inconsistent' with the other substantial evidence in the record."  (Id.) (citing 20 C.F.R. § 404.1527(d)(2)).  Plaintiff further argues that "[a] finding that a treating source's

medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and adopted by the adjudicator."  (Pl. Br. 20.)

This Court finds that ALJ Muehlig did not disregard Dr. Kelly's opinion that Plaintiff is "disabled from working secondary to diagnoses of obesity, arthritis, sciatica, low back pain, diabetes mellitus and hypertension."  Rather, ALJ Muehlig took Dr. Kelly's opinion into consideration, then provided a rational explanation as to why his opinion was unpersuasive.  (Tr. 15.)  Dr. Kelly's determination that a claimant is unable to work is a decision reserved for the Commissioner, and not delegated to medical professionals.  See 20 C.F.R. § 404.1527(e)(1), (2), (3).  The Commissioner weighs the opinions of the various treating and examining sources in order to decide whether Plaintiff is disabled within the meaning of the Act.  ALJ Muehlig found Dr. Kelly's opinion regarding Plaintiff's disability unpersuasive because it was based solely upon "reports on medical diagnoses rather than objective clinical findings."  (Tr. 15.)  Absent any such objective evidence in the record to the contrary, ALJ Muehlig's assessment of Dr. Kelly's medical opinion deserves deference.

In addition, Plaintiff argues that the ALJ must give the opinion of the treating physician "'great weight,' especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  (Pl. Br. 20-21) (citing Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).)  ALJ Muehlig did not, however, discount Dr. Kelly's opinions, nor did he ignore the method by which Dr. Kelly reached his opinions.  (See Tr. 162, 163, 207, 241.)  To the contrary, ALJ Muehlig relied in part on Dr. Kelly's opinion that Plaintiff is able to engage in sedentary work.  (Tr. 15.)

ALJ Muehlig's consideration of Dr. Vonroth's opinion was equally sufficient.  ALJ

24

Muehlig refrained from giving substantial weight to Dr. Vonroth's opinion because he last examined Plaintiff in November of 2003.  (Id.)  Nevertheless, Dr. Vonroth's opinion was taken into consideration, and is discussed at length in ALJ Muehlig's opinion.  Although ALJ Muehlig did not defer to Dr. Vonroth's conclusion that Plaintiff is disabled, a mere opinion that a claimant is disabled does not carry conclusive weight.  See 20 C.F.R. §§ 404.1527(e)(1), (2), (3).

Plaintiff argues that ALJ Muehlig failed to point to contradictory evidence in the record, and that a "treating physician's opinion can be rejected only on the basis of contradictory medical evidence in the record."  (Pl. Br. 22) (citing Frankenfield v. Bowen, 861 F.2d 405, 406 (3d Cir. 1988).)  This Court need not examine whether there exists "contradictory" evidence in the record, however, because none of the evidence provided by Plaintiff's physicians is *rejected*.  As discussed earlier, ALJ Muehlig took into account the opinions of the Plaintiff's treating physicians when rendering his decision.

Plaintiff incorrectly claims that ALJ Muehlig improperly discounted the opinions of Dr. Kelly and Dr. Vonroth.  ALJ Muehlig gave proper deference to each of the treating physicians' medical opinions, and provided adequate explanations when declining to adopt the physicians' opinions.

    4.    <u>Whether ALJ Muehlig Failed to Assess All of Plaintiff's Ailments When Evaluating Plaintiff's Residual Functional Capacity</u>

Plaintiff claims that ALJ Muehlig incorrectly assessed her RFC when evaluating her ability to work a largely sedentary job.  (Pl. Br. 24-30.)  Plaintiff disputes the finding by ALJ Muehlig that Plaintiff's past work was sedentary, and that she could return to a similar, relevant position in her current physical capacity.  (Pl. Br. 25.)  Plaintiff also argues that ALJ Muehlig

improperly discounted Dr. Kelly's opinions, which Plaintiff believes support the conclusion that she is unable to return to her past relevant work.  (Pl. Br. 26.)

The fourth step of the sequential analysis requires the ALJ to consider whether the claimant retains the RFC to return to the relevant work she performed before her alleged disability.  20 C.F.R. § 404.1520(e).  RFC is defined as the work a claimant can do despite her alleged limitations.  20 C.F.R. § 404.1545(a).  A claimant whose RFC enables her to perform the functional demands of her past work will not be considered "disabled."  Past relevant work includes work that the claimant has performed in the preceding fifteen years.  20 C.F.R. § 404.1560(b)(1).  The claimant retains the initial burden of establishing that she is not capable of returning to this past relevant work as a result of her alleged medical condition.  Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984).

Plaintiff claims that ALJ Muehlig failed to account for her obesity in his analysis regarding "plaintiff's exertional limitations."  (Pl. Br. 26.)  However, ALJ Muehlig considered Plaintiff's obesity throughout the evaluative process.  ALJ Muehlig found that Plaintiff suffered from severe morbid obesity.  (Tr. 12, 14, 16.)  After considering all of the evidence in the record, ALJ Muehlig concluded that Plaintiff's obesity did not contribute to a disability and did not exacerbate Plaintiff's condition.  (Tr. 16.)  In the findings of fact, ALJ Muehlig wrote:

> The medical evidence establishes that the claimant has "severe" obesity and musculoskeletal[] impairments, but does not establish medical findings, which "meet" or "equal" in severity the clinical criteria of any impairment listed in the Listing of Impairments, Appendix 1, Subpart A, Regulations No. 4.

(Id.)

ALJ Muehlig rejected Plaintiff's argument that her "spontaneously torn meniscus" and

26

"anatomical basis for pain" may be caused or aggravated by plaintiff's obesity.  (Pl. Br. 27; Tr. 14.)  Instead, ALJ Muehlig found that Plaintiff's torn meniscus "occurred spontaneously following a long pre-existing history of morbid obesity."  (Tr. 14.)  X-rays contained in the medical record, ALJ Muehlig further determined, indicate an "anatomical (spondylolisthesis) basis for the claimant's complaints of low back pain unconnected to her alleged obesity."  (Id.)  Last, ALJ Muehlig determined that "claimant's work history indicates the ability to function in a job requiring limited standing for many years."  (Id.)  Having considered these factors in his decision, ALJ Muehlig provided substantial evidence supporting the finding that Plaintiff's obesity did not contribute to a disability.

Plaintiff argues that an ALJ is not permitted to make "speculative inferences from medical reports" (Pl. Br. 27), but ALJ Muehlig does no such thing.  He substantiates his argument with adequate evidence that Plaintiff's morbid obesity was not the direct cause, nor an aggravating factor, in her alleged disability.  (Tr. 14, 16.)  ALJ Muehlig did not substitute his own judgment for that of a physician.  See Ferguson, 765 F.2d at 37.  Instead, ALJ Muehlig considered the relevant medical evidence contained in the record and made his determination by considering the record as a whole, paying special attention to the opinions submitted by Dr. Kelly, Dr. Vonroth, and Dr. Zhang.

Plaintiff asserts that ALJ Muehlig failed to consider properly the "limitations imposed by all of plaintiff's impairments," including "lack of bladder control/urinary urgency, phlebitis, and anxiety."  (Pl. Br. 29.)  Moreover, Plaintiff continues, these impairments were not considered "in combination with obesity, obesity-related impairments, and musculoskeletal impairments, [in the analysis of] her RFC and ability to return to past relevant work."  (Id.)  Plaintiff contends that ALJ

Muehlig's failure "to assess all relevant factors in evaluating plaintiff's RFC . . . is reversible error."  (Id.)

"In making a residual functional capacity determination, the ALJ must consider all evidence before him."  Burnett, 220 F.3d at 121.  Furthermore, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  Id.  The Third Circuit held in Cotter that "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."  650 F.2d at 482.  "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."  Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981), reh'g denied, 650 F.2d 481 (3d Cir. 1981).

"Evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence."  Raglin v. Massanari, 39 Fed. App'x 777, 778 (3d Cir. 2002) (citing Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001)).  An ALJ must consider all presented evidence, and while he may reject evidence, he must provide reasons so that a reviewing court can consider his judgment.  See Burnett, 220 F.3d at 121.

Although Plaintiff's anxiety was merely mentioned in testimony, and was never raised in her applications for benefits, this testimony was part of the original administrative record.  (Tr. 51-52, 215.)  Therefore, ALJ Muehlig was required to at least address this ailment.  Plaintiff's history of phlebitis was similarly present in the record (Tr. 43, 135, 193), and should have been considered by the ALJ as well.

Finally, Plaintiff's urinary control and urgency problems were impermissibly dismissed by

28

ALJ Muehlig without explanation.  Evidence of Plaintiff's urinary control problem was contained in the original record presented to ALJ Muehlig for consideration.  (Tr. 123.)  ALJ Muehlig fails to mention Plaintiff's alleged urinary problems in his opinion.  Without an indication as to why certain evidence was rejected, this Court cannot determine if the evidence was simply ignored. Cotter, 642 F.2d at 705.  Evidence exists in the record to show that this should have been considered, alone and in combination with other alleged ailments, to determine Plaintiff's RFC and her ability to return to her past work.  (Tr. 163, 241.)  Plaintiff argues correctly that her frequent need to urinate, in combination with her "obesity, obesity-related impairments, and musculoskeletal impairments," must be considered in order to effectuate meaningful review.  (Pl. Br. 29.)

This Court finds that ALJ Muehlig failed to assess all of the relevant evidence. Accordingly, this case must be remanded to the ALJ for further consideration of Plaintiff's anxiety, phlebitis, and urinary control problems.  The burden remains on the Plaintiff to prove that her impairment, alone or in combination with her obesity, meets or exceeds a level of severity to qualify her as disabled.  See Williams v. Barnhart, 87 Fed. App'x 240, 243 (3d Cir. 2004).

## V.  <u>CONCLUSION</u>

For the reasons stated above, this Court finds that the Commissioner's decision is not supported by substantial evidence and must be vacated and remanded for further consideration.


Date: December 28, 2007


                      <u>S/Joseph A. Greenaway, Jr.</u>
                      JOSEPH A. GREENAWAY, JR., U.S.D.J.